**LAWSON, Auditor and Ex Officio Insurance Commissioner of West Virginia, v. ÆTNA INS. CO. et al.**

No. 2960.

Circuit Court of Appeals, Fourth Circuit.

June 10, 1930.

W. Elliott Nefflen, Asst. Atty. Gen., of West Virginia, and David C. Howard, of Charleston, W. Va. (Howard B. Lee, Atty. Gen. of West Virginia, Jackson D. Altizer, of Charleston, W. Va. and William B. Hogg, of Williamson, W. Va., on the brief), for appellant.

James M. Guiher, of Clarksburg, W. Va. (Louis A. Johnson and Steptoe & Johnson, all of Clarksburg, W. Va., on the brief), for appellees.

Before NORTHCOTT, Circuit Judge, and BAKER and SOPER, District Judges.

NORTHCOTT, Circuit Judge.

This is an appeal by Edgar C. Lawson, hereinafter referred to as the defendant, auditor and ex-officio insurance commissioner of the state of West Virginia, from a final decree of the District Court of the United States for the Southern District of West Virginia, at Charleston, entered on the 4th day of September, 1929, which enjoined said in-

surance commissioner from prohibiting or interfering with the execution and performance of three certain agency commission contracts between Ætna Insurance Company and one hundred and twenty-two other foreign fire insurance companies licensed to do business in West Virginia (hereinafter referred to as "plaintiffs"), and their respective local agents in West Virginia. The decree further provided:

"That the said defendant Edgar C. Lawson, Auditor and Ex-officio Insurance Commissioner of the State of West Virginia, and his deputies, assistants, representatives, agents, employees, and attorneys be and they are hereby restrained and enjoined, until the further order of this court, from further interfering with or attempting to interfere with in any manner whatever, and from enforcing or attempting to enforce, by injunction suit or otherwise, any official order or ruling prohibiting, modifying or affecting the submission, use, execution, or performance of the three agency commission contracts set forth and described in the bill of complaint and exhibits filed in this cause or any or either of said contracts."

The proceedings had in this cause in the District Court may be very briefly narrated. The suit was instituted in the District Court on April 13, 1929, by Ætna Insurance Company and one hundred and twenty-two other foreign fire insurance companies against Edgar C. Lawson, auditor and ex officio insurance commissioner of the state of West Virginia, and Howard B. Lee, Attorney General of the state of West Virginia, as defendants, for the purpose of enjoining the said insurance commissioner and Attorney General from interfering with or attempting to prohibit the use, execution, or performance of three optional contracts theretofore submitted by the plaintiff companies to their respective West Virginia agents, providing for the amount of commissions to be paid to said agents. All of the plaintiff companies being foreign corporations, and the amount in controversy as to each of the plaintiffs being in excess of $3,000, the District Court had jurisdiction on the ground of diversity of citizenship. The bill of complaint included a prayer for a temporary injunction.

On April 27, 1929, the two defendants moved to dismiss the bill of complaint upon various grounds assigned in the written motion. On the same day, the defendant Howard B. Lee, Attorney General of West Virginia, filed his separate answer, in which he averred that he had not been consulted by In-

surance Commissioner Lawson regarding the latter's objections to the legality of the three contracts in question, and that he had no intention of instituting any suit or proceeding of any kind against the plaintiff companies. On May 4, 1929, a separate answer was filed by Insurance Commissioner Lawson, in which he admitted that he had adjudged the three commission contracts to be illegal and improper, and that he had prohibited the use thereof and had ordered their withdrawal, his objections to said contracts being, in substance, that they were being used to enforce what is known in the insurance world as a policy of "separation," the ultimate purpose and effect of which would be, in the opinion of the insurance commissioner, to enable the plaintiff companies to secure the control and monopoly of the fire insurance business in West Virginia. On May 15, 1929, after having heard arguments by counsel, the District Court overruled the motion to dismiss the bill, and awarded the temporary injunction prayed for against the defendant Lawson. No injunction was granted against Attorney General Lee.

No evidence was taken, and the matter was submitted upon the bill and answer, and on September 24, 1929, a final decree was entered, making the injunction permanent.

Sections 3 and 4 of chapter 34 of the Code of West Virginia, entitled "Insurance Companies," are as follows:

"§ 3. *Examination of Business Methods of Insurance Companies.*—The insurance commissioner may from time to time examine the methods of business of any company, corporation, association, partnership, or combination of persons doing any kind or form of insurance business in this state, and may require them to answer such questions as he may think necessary for the purpose of such inquiry; and if in his opinion, any such company, corporation, association, partnership or combination of persons is doing business in an illegal, improper or unjust manner, or failing to adjust and pay losses and obligations when they become due, excepting claims to which there is a substantial defense, he may order it to discontinue such illegal or improper method of doing business and may order it to adjust and pay its losses and obligations as they become due.

"§ 4. *Enforcement of Orders of Commissioner.*—If any such company, corporation, association, partnership, or combination of persons shall fail within ten days to obey any such order of the commissioner, he may apply to a court or judge having jurisdic-

318

tion for an injunction or for the appointment of a receiver, or for both, and such court or judge may enforce such order of the commissioner by injunction, or by appointing a receiver to take charge of the property and affairs of such company, corporation, association, partnership or combination of persons, or both; and may make all such further orders as may be necessary or proper to carry into effect such an injunction and receivership."

■ Foreign insurance companies entering the state of West Virginia and securing license to do business therein submit themselves, not only to the statutes of the state, but to such interpretation of those statutes as may be made by the state courts. This court in Massachusetts Bonding & Insurance Co. v. Concrete Steel Bridge Co., 37 F.(2d) 695 held to this effect, and cited authorities sustaining the holding.

■ This being true, it seems clear that, in restraining the insurance commissioner from bringing a suit in the state court to test the validity of his order to the insurance companies, with respect to the contracts in question, the court below went too far. The court may well restrain the insurance commissioner from arbitrarily interfering between the companies and their agents when the companies decline to obey his orders, until the state court, under the provisions of the West Virginia Code above cited, shall have decided that his orders are proper; but to restrain an administrative officer from testing the question under an admittedly valid statute is error.

The insurance commissioner was not seeking to cancel the license of the plaintiffs, or any of them, to do business in the state, nor was he threatening to take any official action that would result in any immediate loss to the plaintiffs, or any of them. The commissioner only proposed by suit to test the matter in the courts, and this, under the statutes above quoted, he had the right to do. Having reached the conclusion that the contracts in question were improper, it was his duty to bring the suit contemplated in the statute.

The proposed action of the insurance commissioner was clearly of an executive character, and in 2 High on Injunctions (4th Ed.) § 1326, the rule is stated as follows: "If the act it is sought to enjoin is executive instead of ministerial in its character, or if it involves the exercise of judgment and discretion upon the part of the officer, as distinguished from merely ministerial, its performance will not be prohibited by injunction."

Marbury v. Madison, 1 Cranch, 137, 2 L. Ed. 60; Gaines v. Thompson, 7 Wall. 347, 19 L. Ed. 62; Board of Liquidation v. McComb, 92 U. S. 531, 23 L. Ed. 623; Noble v. Union River Logging R. R. Co., 147 U. S. 165, 13 S. Ct. 271, 37 L. Ed. 123; Louisiana v. McAdoo, 234 U. S. 627, 34 S. Ct. 938, 58 L. Ed. 1506; City of New Orleans v. Paine, 147 U. S. 261, 13 S. Ct. 303, 37 L. Ed. 162.

■ A court of equity will not grant an injunction for the purpose of preventing a defendant from bringing a suit for injunction against the plaintiff, on the ground that the latter will suffer irreparable injury from erroneous and improper judicial action. ·

In 1 High on Injunctions (4th Ed.) § 64, it is said: "It is to be observed, however, that mere apprehensions or fears on the part of the person asking relief that the defendant may institute actions against him in the future will not warrant a court of equity in enjoining the bringing of such actions, nor will a court of equity have powers to grant an injunction for the purpose of preventing defendant in the injunction suit from bringing an action for an injunction against complainant in that suit, since equity will not entertain jurisdiction upon the ground that another court of competent jurisdiction may decide improperly."

The legality or propriety of the contracts in question was not in any way properly before the court below. The only question was whether the insurance commissioner could test the propriety or legality of his order concerning the contracts in a proceeding in the state courts that was authorized by the state statute. In the event that the rights of the plaintiffs were in any way infringed upon in the state courts, proper remedy would be given them by appeal to the Supreme Court of the United States, but only after prior local questions had been dealt with in the state courts. Gilchrist v. Interborough Rapid Transit Co., 279 U. S. 159, 49 S. Ct. 282, 73 L. Ed. 652.

The attorneys for the plaintiff rely upon the following cases to sustain their contention:

In Work v. Louisiana, 269 U. S. 250, 46 S. Ct. 92, 70 L. Ed. 259, it was held that the officer was exceeding the authority conferred upon him by the law and doing an illegal act under cover of his office. In such a case the officer certainly may be enjoined from such illegal act.

In Olsness v. Home Insurance Co., 14 F. (2d) 907; Insurance Companies v. Clunie (C. C.) 88 F. 160; Firemen's Insurance Co.

v. Beha (D. C.) 30 F.(2d) 539; Mutual Life Insurance Co. v. Boyle (C. C.) 82 F. 705, the officer was either acting without the limitation of his authority or in disregard of the established rule of law, or was threatening to do some official act that would have caused irreparable injury to the complaining parties, and such cases are easily distinguished from the instant case, where the defendant was only threatening to bring a suit to enforce his order.

The appellant announced at the argument that he objected only to that part of the injunction which prohibited the commissioner from bringing the injunction suit to enforce his order. The injunction will be so modified as to in no way interfere with the defendant, his deputies, assistants, representatives, agents, employees, and attorneys from taking any steps they may conclude to take or may be advised to take looking to bringing suit in the state courts under the statute. Costs will be awarded against the appellee.

Modified.