## I. T. S. RUBBER CO. v. ESSEX RUBBER CO.

(Circuit Court of Appeals, First Circuit. October 23, 1924.)

No. 1642.

1. Patents ⏳167(1)—Claim must be read in light of specifications and drawings.

Claim must be read in light of specifications and drawings.

2. Patents ⏳141—Reissue granted only for same invention for which original patent was granted.

Under Rev. St. § 4916 (Comp. St. § 9461), reissue patent can be granted only for same invention for which original patent was granted.

3. Patents ⏳328—Reissue, 14,049, claims 5–9, as limited, held not infringed.

Tufford reissue patent, 14,049, claim 8, for rubber heel lift, in light of specifications, drawings, and proceedings in Patent Office, held by the words "upper edge" to refer to rear upper edge, and such claim, as so limited, and claims 5–9, not infringed.

4. Judgment ⏳675(1)—Patents ⏳327—Defendant, refusing to become party to other infringement suits, by agreeing to hold parties sued harmless, held not estopped from contesting infringement.

Where defendant refused to become party to suits against jobbers handling its shoe heels, but merely agreed to hold parties sued harmless, and to pay whatever damages were assessed against them, and took no part in conduct of the suits, defendant was not estopped from contesting question of infringement.

Appeal from the District Court of the United States for the District of Massachusetts; George Hutchins Bingham, Judge.

Suit by the I. T. S. Rubber Company against the Essex Rubber Company. From an order dismissing plaintiff's bill on the merits, plaintiff appeals. Affirmed.

F. O. Richey, of Cleveland, Ohio, and Charles A. Brown, of Chicago, Ill., for appellant.

Lucius E. Varney, of New York City (Frederick L. Emery, of Boston, Mass., on the brief), for appellee.

Before JOHNSON, Circuit Judge, and MORRIS and LOWELL, District Judges.

JOHNSON, Circuit Judge. This is a patent infringement suit, which has been before this court once before (281 F. 5) on a motion to dismiss, which had been granted by the District Court for Massachusetts. Upon the record then before us we reversed the decree of the District Court, and the

case has since been heard upon its merits. The District Court has decided that, upon its merits, the bill of the plaintiff should be dismissed, and from that decree an appeal has been taken.

The bill charges infringement of reissue letters patent, No. 14,049, applied for June 22, 1915, and issued January 11, 1916, to the plaintiff, as assignee from John G. Tufford, to whom the original patent, No. 1,110,730, was issued September 15, 1914, on an application filed July 21, 1912.

The patent covers a cushion lift for a shoe heel. The original patent contained four claims, all of which appear in the reissue patent, with six additional claims. Infringement is charged of five of these additional claims, which are as follows:

"5. A heel lift of substantially nonmetallic resilient material having its body portion of concavo-convex form on every line of cross section, the concave upper face lying entirely below a plane passing through the rear upper edge and the breast corners of the lift.

"6. A heel lift of substantially resilient material having its body portion of concavo-convex form on every line of cross section, the concave upper face lying entirely below a plane passing through the rear upper edge and the breast corners of the lift, said lift being provided with nail-receiving openings located near the center thereof.

"7. A heel lift of substantially resilient material comprising a body portion, the attaching face of which is concave and the tread face of which is convex on every line of cross section and normally held in such form by its own inherent resiliency, the concave attaching face lying entirely below a plane passing through the rear upper edge and the breast corners of the lift, whereby to cause the entire margin of said lift to exert a uniform pressure on the heel of a shoe when said lift is positioned on the heel and the convex tread face thereof depressed to flatten said lift.

"8. A heel lift of resilient material comprising a body portion of uniform thickness throughout its entire area and of concavo-convex form on every line of cross section, the concave upper face of the lift lying entirely below a plane passing through the upper edge and the breast corners of said lift.

"9. A heel lift of resilient material comprising a body portion, the attaching face of which is concave and the tread face of which is convex, the concave face of the lift being unbroken and lying entirely below a plane passing through the rear upper edge and the breast corners of the lift, whereby when the convex tread face is depressed to flatten said lift a suction will be created between the lift and the heel to hold the attaching face of the lift throughout its entire extent in contact with the exposed face of the heel."

Defendant in its answer admits that the reissue letters patent are valid, but denies infringement, averring that by reason of the rejection of claims in the application for the original patent, and for the reissue patent, upon reference to certain prior patents and the acquiescence of the applicant in said rejections, the plaintiff admitted that the reissue patent "did not cover or include every form of resilient heel lift which was 'concavo-convex on every line of cross section,'" and that, in addition to the plaintiff's heel being concavo-convex on every line of cross section, the reissue patent contains the further limitation without which the Patent Office refused to allow the claims in issue, viz. that the concave upper face lies "entirely below a plane passing through the rear upper edge and the breast corners of the lift."

The alleged infringing heels of the defendant are shown by two exhibits marked Plaintiff's Exhibits 1 and 2. In those marked Plaintiff's Exhibit 1 the attaching surface is made up of a flat, oval surface from which a bevel portion rises to the side and rear edges, and nearly to the breast edge; so that its rear edge and side edges lie within the same plane, making what has been called a "saucer-shaped heel."

Exhibit No. 2 is of the same general form, except that the center of its breast edge is lower than in Exhibit No. 1, and rises but little above the surface of the central oval plane, making what has been characterized as a "scoop-shaped heel."

In substance defendant's contention is that the letters of the reissue patent cover only a heel concavo-convex upon every line of cross section, and which, in addition, has its entire concave surface below a plane passing through its breast corners and rear upper edge, that the sides of the defendant's heels are straight, and lie in the same plane as the rear upper edge and breast corners, and that this distinguishes them from the heel of the plaintiff.

When the case was heard before, we said in our opinion (281 F. 5, 9):

"If it should appear that the raised side edges in the defendant's heel do not cause it to function in a different way from the plaintiff's, but simply cause its rear edge

and breast corners to function less perfectly (a matter of degree), we think it should be held to infringe.

"As the defendant's heel may or may not infringe the claims in issue, depending upon whether or not it functions in the way or manner heels constructed in accordance with the requirements of the claims in issue function, and as this question cannot reasonably be determined on a mere inspection of the heels thus constructed, we think the case should be remanded for trial, unless the defendant is estopped to deny the question of infringement, due to the pro confesso decrees obtained against the dealers in the Sixth Circuit."

We did not then have the record of the proceedings in the Patent Office before us; but at the hearing upon the merits in the District Court the file wrapper was introduced in evidence. From that it clearly appears that upon the application for the original patent the applicant was denied claims which cover a heel having its upper side edges, breast corners, and rear edge in the same plane, and that he acquiesced in the rejection of such claims.

The applicant also sought to obtain the allowance of claims covering a heel having a concave attaching face and a convex tread face, and these were denied, and their denial acquiesced in by the applicant.

The four claims which were finally allowed upon the original application related to the means of attaching the lift to the heel, the form and position of the washers which were imbedded within it to secure the attaching nails, and the suction area of the heel, which was alleged to be increased by slight grooves upon its concave surface, so that, when the lift was applied to the heel of the shoe, and its convex side depressed to cause its concave attaching face to be applied to a heel, the atmospheric pressure would tend to prevent the lift from resuming its normal form.

In his application for a reissue patent the applicant states that his original specification was defective and insufficient; that it failed to claim adequately what he had really invented and disclosed; that such error arose from failure of his attorneys to clearly apprehend and point out the true invention made by him; that, consequently, the claims were restricted to a heel lift in which washers of a particular form were imbedded, and to a heel lift in which intercommunicating channels are formed in the attaching face, whereas he did not in fact consider his invention so limited; and that

he did not understand and appreciate the scope of the claims of his patent when the same was granted.

The proceedings in the Patent Office clearly disclose that the claims in the original application, covering a heel having a concave attaching face and its upper side edges, breast corners, and its rear upper edge lying in the same plane, were disallowed upon references to prior patents; that he acquiesced in such rejection; and that such acquiescence was not occasioned by inadvertence or mistake. The patent proceedings upon the reissue patent show that applicant again attempted to obtain the allowance of claims for a concavo-convex heel; but these claims were denied upon references to prior patents, and he acquiesced in their rejection. The patent which came nearest to that of the applicant was that issued November 6, 1900, to Nerger, and in an attempt to distinguish from this patent the applicant amended his claims so as to call for a heel lift of resilient material "comprising a body portion of concavo-convex form on every line of cross section and normally held in such form by its own inherent resiliency."

These amended claims were rejected upon Nerger. The applicant then called attention to the fact that the Nerger lift was not concavo-convex on every line of cross section, as its upper longitudinal edge was represented by a straight line, and that the deepest portion of the concavity of its upper surface terminated at the breast of the heel, so as to leave an opening there which would prevent the lift from being held on the heel by suction, and that, by reference to the longitudinal sectional view of applicant Nerger's drawing, it would be seen that a true depression or concavity was formed in the attaching face of the lift, which extended from the forward edge of the breast of the heel to the rear portion thereof.

The examiner insisted upon his previous rejection, and said:

"The rubber heel lift of Nerger has an upper surface concave on any line of cross section, and a tread surface concentric thereto. His object is to make the edges of the lift closely hug the margin of the heel proper, by flattening the spherical arch at the center of the lift, and securing such center to the heel by nails."

Applicant then further amended by canceling claims 5 to 8, inclusive, and substituted therefor present claims 5 to 9, inclusive, calling attention to his drawings, which he claimed showed "that the upper concave at-

taching face of the lift lies entirely below a plane tangent to the rear upper edge and the breast corners of the lift."

He also claimed that the heel lift shown in Nerger had the deepest portion of its concavity in its upper surface at the breast of the heel.

Attention was called to the fact that this was conclusively demonstrated during a recent oral interview with the principal examiner, at which time sample lifts, constructed according to the Nerger patent, and also a set of molds used in making the Nerger lift and specimen lifts of the applicant, were presented to the examiner for his examination. These claims were rejected, and attention was called by the examiner to the fact that Figure 2 of the applicant's drawing showed that a point midway between the breast corners of the lift was in contact with the heel to which it was applied, and that, according to this figure, "a plane tangent to the rear edge and the breast corners would also pass through the entire front edge of the lift."

He also stated that the sample lift shown to him at the interview did not correspond to the drawing, since—

"All the points of its breast except the two corner points lie below a straight line passing through these points."

"In each of the claims 5, 6, 7, 8, and 9 applicant specifies 'that the concave upper face lies entirely below a plane tangent to the rear upper edge and the breast corners of the lift.'"

These claims were rejected, because they did not read on the drawings. The applicant then called attention to Figures 2 and 4 of his drawings, claiming that they demonstrated that the concave upper face of the lift lies entirely below a plane passing through the rear upper edge and breast corners of the lift, and stated:

"Owing to the curvature of the concave attaching face of the lift, the rear upper edge and breast corners of said concave attaching face are disposed in a plane above the upper side edges and the breast edges of the lift; that the specification of the original application clearly sets forth that applicant's lift is of concavo-convex form on every line of cross section, and that its marginal surface is at all points radial to the center of curvature of its concave side. This statement in the original application shows that the concave attaching face of the applicant's lift is in the form of a true curve."

Permission was asked to change Figure 2 of the drawings, which "did not clearly illustrate applicant's invention." This was granted, and Figure 2 as changed then showed the breast of the lift to be slightly curved. A new claim 10 was then added, showing that the rear upper edge and breast corners of the attaching face of the lift are disposed in a plane above the upper side edges of said attaching face. The claims were then allowed.

[1-3] The District Court has found that it clearly appears that a mistake was made, both by the examiner and the applicant in the omission of the word "rear" before the words "upper edge" in claim 8 of the reissue patent, and it has been strenuously argued before us that this was error, as the court is without power to revise the plain, unambiguous language of the claim. That the claim must be read in the light of the specifications and drawings is too well established to need the citation of any authorities.

Under R. S. § 4916 (Comp. St. § 9461), a reissue patent can only be granted for the same invention for which the original patent was granted. Mahn v. Harwood, 112 U. S. 354, 5 S. Ct. 174, 6 S. Ct. 451, 28 L. Ed. 665; Parker & Whipple v. Yale Clock Co., 123 U. S. 87, 8 S. Ct. 38, 31 L. Ed. 100. In the latter case the court said at page 98 (8 S. Ct. 44):

"Corrections may be made in the description, specification, or claim where the patentee has claimed as new more than he had a right to claim, or where the description, specification, or claim is defective or insufficient, but he cannot under such an application make material additions to the invention which were not described, suggested, nor substantially indicated in the original specifications, drawings, or Patent Office model."

According to the original specification and drawings of the applicant, the upper side edges of the entire concave surface of the Tufford lift do not lie in a plane passing through the breast corners and all the upper edges of the lift, and this was expressly disclaimed by the applicant's attorney. Claim 8 of the reissue patent, without the word "rear" before the words "upper edge," is invalid, because not for the same invention as described in the original specification and drawings, and would have been so found by the examiner, had he not believed, as it clearly appears from the file wrapper he did, that the word "rear" appeared in the claim before the words "upper edge."

While the defendant has admitted the va-

lidity of the patent, it has in its answer· alleged that the scope of the patent is limited by the proceedings in the Patent Office, as shown by the file wrapper.

Construing the claim in the light of the specification and drawings, as well as of the proceedings in the Patent Office, we have no doubt that the words "upper edge," used in this claim, refer to the rear upper edge; for, if this were not so, the claim would be invalid. The plaintiff's invention, therefore, is limited to a heel lift concavo-convex on every line of cross section, whose concave face lies entirely below a plane passing through its two breast corners and rear upper edge, and is not infringed by the defendant's heels.

[4] The plaintiff also contends that the defendant assumed the control and bore the expense of suits for infringement brought by the plaintiff in the Sixth and Seventh circuits against jobbers who handled its heels, and that the defendant is estopped to contest infringement in this case. The records in those cases and the correspondence between the parties show clearly that the defendant refused to become a party to these suits, or in any way to assume control of them, but only agreed that it would hold the parties sued harmless, and would pay whatever damages were assessed against them, and that it took no part in the conduct or control of the suits, but only in the adjustment of the damages after pro confesso decrees had been entered.

In its opinion the District Court has dealt at great length with the connection of the defendant with all these suits, and we approve its findings and its ruling that the defendant is not estopped from contesting the question of infringement in this suit.

The decree of the District Court is affirmed, with costs to the appellee.